21-mj-621 HB

STATE OF MINNESOTA    )
                     )   AFFIDAVIT OF ANTHONY FLETCHER
COUNTY OF RAMSEY     )

I, Anthony Fletcher, being first duly sworn under oath, depose and state as follows:

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws. I am a Task Force Officer with the United States Department of Justice, Drug Enforcement Administration ("DEA"), and have been so employed since November 2016. I have received extensive training and experience in drug trafficking investigations. During my law enforcement career, I have been involved in the undercover and controlled purchase of narcotics, the management of and extensive debriefing of confidential informants, the tracing of drug proceeds, and the acquisition and execution of over one hundred search warrants. As a result, I have arrested numerous individuals for violating both state and federal statutes with regards to the possession, manufacture, and sale of controlled substances, and for money laundering violations. I have conducted and or participated in numerous state and federal investigations targeting all level of drug traffickers from state and local traffickers to international organizations. Meanwhile, I

1

have routinely applied for and utilized court orders to obtain cellular telephone GPS tracking, call records, and information contained within devices to further a particular investigation.

2. Based on this training and experience I am familiar with the ways in which individuals and organizations conduct their drug-related business, including, but not limited to their: (a) methods of distributing narcotics; (b) use of telephone communication devices; and (c) their methods and means to launder money to facilitate their narcotics related activities as well as hide the proceeds of these activities. In that role, my duties and responsibilities include conducting criminal investigations of individuals and entities for possible violations of Federal laws, particularly those laws found in Title 18 and Title 21, United States Code (U.S.C.).

3. This affidavit is submitted for the purpose of establishing probable cause in support of a federal criminal complaint and warrant for the arrest of FERNANDO GARCIA-DAVILA, JR., aka "EL NEGRO" ("GARCIA-DAVILA"), PABLO MARGARITO LUNA ("LUNA"), and JAMES RICHARD ANDERSON ("ANDERSON"). The facts set forth in the affidavit are based upon my review of reports, my personal investigation, and discussions I have had with other law enforcement personnel. All observations referenced below that were not made by me were related to me by the persons who made such observations.

This affidavit contains information to support probable cause, but is not intended to convey facts of the entire investigation.

4. Based upon all of the facts and information set forth in this affidavit, your affiant believes that probable cause exists to believe that GARCIA-DAVILA, LUNA, and ANDERSON have committed the offense of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) & 846.

## Background

5. Over the past year, investigators have been conducting an ongoing investigation into a drug trafficking organization (DTO) operating in Rochester, Minnesota which involves the distribution of controlled substances as well as the possession and trafficking of firearms. To date, investigative actions have led to the seizure of at least 5.6 pounds of methamphetamine with 94% purity, as well as at least 100 M30 (Oxycodone) pills from actors related to this trafficking organization. Other actors have described to law enforcement receiving multiple shipments on behalf of people in the organization, totally approximately 18 pounds of methamphetamine.

6. During the investigation of another individual, investigators received information that those working with GARCIA-DAVILA had made at least one delivery of methamphetamine to LUNA. In the beginning of July 2020,

3

investigators began to observe GARCIA-DAVILA in the area of Rochester. Personal and electronic surveillance observed several meetings between LUNA and GARCIA-DAVILA. The extent of the meetings between LUNA and GARCIA-DAVILA were short visits, which are consistent with a relationship primarily involving the distribution of controlled substances.

7. On November 10, 2020, investigators observed through a pen register trap and trace installed on LUNA'S phone that he had been contacted by a phone number suspected to be belonging to GARCIA-DAVILA. On November 10, 2020, investigators were conducting surveillance on LUNA. LUNA left his residence and drove to XXXX Woodcrest Lane SW, Rochester, Minnesota. LUNA pulled into the driveway. Moments before LUNA had pulled into the driveway, a US Postal Service package was dropped off at the residence. LUNA left the residence, and the package was observed to be absent, which was consistent with LUNA immediately taking the package after the US Postal Service dropped it off. After LUNA left the residence, officers conducted a traffic stop of LUNA. A dog sniff was conducted on LUNA'S vehicle, and the dog alerted to the presence of controlled substances. LUNA'S vehicle, and the package therein, were searched. The packaged contained approximately 3.8 pounds of a substance which field tested positive for methamphetamine.

8. LUNA provided a statement pursuant to Miranda. LUNA stated that he works for "El Negro." El Negro is a known alias of GARCIA-DAVILA. LUNA stated that GARCIA-DAVILA had asked LUNA for an address to which GARCIA-DAVILA could send shipments. LUNA provided to GARCIA-DAVILA the XXXX Woodcrest Lane SW address. LUNA stated that he was contacted by GARCIA-DAVILA on November 10, 2020 by phone. LUNA stated that GARCIA-DAVILA told him that the package was ready to be picked up.

9. LUNA provided consent for investigators to search his phone. In LUNA'S phone, investigators found messages sent by LUNA which depicted the XXXX Woodcrest Lane SW address. Investigators also found a screenshot received by LUNA that contained shipment tracking information. This screenshot was sent by a phone number associated with GARCIA-DAVILA. The tracking information matched that of the seized package that contained the suspected methamphetamine.

10. In February and March 2021, investigators received information from a Confidential Reliable Informant ("CRI"). The CRI provided information that they had observed GARCIA-DAVILA in possession of methamphetamine and blue pills on a consistent basis over the past eight months. The CRI provided information that they had seen GARCIA-DAVILA with approximately a baseball-size bag of suspected methamphetamine.

11. On March 24, 2021, investigators met with a confidential informant ("CI"), who advised that they were going to arrange for a controlled purchase of 60 blue Oxycodone pills from a suspect. Investigators were aware that, at that time, there had been multiple overdoses and deaths suspected to have resulted from counterfeit blue Oxycodone pills that contained fentanyl. Investigators met with the CI and provided them with a recording device and pre-recorded buy funds. The CI proceeded to a residence in Goodhue, Minnesota. Investigators provided surveillance of the residence and monitored the recording device. Investigators heard sounds and commotion consistent with an occupant of the residence suffering from an acute overdose. Due to the apparent ongoing medical emergency, investigators entered the residence.

12. Upon entry, investigators saw an individual running away from them with a clear plastic baggy full of pills. Investigators also encountered GARCIA-DAVILA inside the residence. The residence was searched and investigators found approximately 200 grams of methamphetamine, 85 Oxycodone pills, 6 tabs of MDMA, 3.8 grams of crack cocaine, 0.5 grams of suspected fentanyl, and 19 grams of marijuana. Investigators also found digital scales with methamphetamine residue and numerous baggies commonly used to portion controlled substances for sales. Officers arrested GARCIA-DAVILA.

13. GARCIA-DAVILA was interviewed pursuant to Miranda. GARCIA-DAVILA stated that he provided addresses for shipments to various individuals. GARCIA-DAVILA stated that approximately three shipments went to LUNA. GARCIA-DAVILA stated that both he and LUNA work for another individual.

14. After the Goodhue residence was searched, investigators searched two residences that were associated with GARCIA-DAVILA'S narcotics distribution efforts in Rochester. One of the residences is a residence that GARCIA-DAVILA had often stayed at for extended periods of time, and is a residence that is rented out by GARCIA-DAVILA'S son. As officers approached this residence, various individuals, including GARCIA-DAVILA'S son suspiciously moved away from a Chevrolet Impala that they had been standing next to. A dog sniff was conducted on the Chevrolet Impala and the dog alerted to the presence of controlled substances. A car key that had been recovered from GARCIA-DAVILA during his arrest earlier that day fit the Chevrolet Impala. The Chevrolet Impala was searched pursuant to a search warrant and over two pounds of methamphetamine were found in the trunk. Surveillance video indicates that the last person to drive that Chevrolet Impala two days prior was GARCIA-DAVILA, who had been found with the key.

15. Over the course of the investigation, investigators observed ANDERSON make numerous suspicious drug pickups from two residences associated with GARCIA-DAVILA in Rochester. On January 13, 2021, investigators at the Rochester Police Department observed ANDERSON conduct a suspected drug sale in Rochester. Investigators conducted a traffic stop of ANDERSON'S car and searched it. Investigators found over 100 grams of methamphetamine in ANDERSON'S possession.

16. ANDERSON provided a statement pursuant to Miranda. ANDERSON stated that he purchased one pound of methamphetamine from GARCIA-DAVILA in the previous 48 hours. ANDERSON stated that he had contacted GARCIA-DAVILA by phone and informed GARCIA-DAVILA that he had a person that needed about half-pound of methamphetamine. GARCIA-DAVILA then instructed ANDERSON to go to XXXX 4th Ave SE, Rochester. ANDERSON went to that address and met with GARCIA-DAVILA. ANDERSON paid GARCIA-DAVILA $5,8000 in cash and received one pound of methamphetamine. ANDERSON also stated that he provided GARCIA-DAVILA his address and received numerous multi-pound shipments of methamphetamine for GARCIA-DAVILA. ANDERSON stated that he would store the methamphetamine at his apartment for a few days and then GARCIA-DAVILA would come pick it up.

17. Investigators reviewed phone data from GARCIA-DAVILA'S phone, surveillance video at XXXX 4th Ave SE, and data extracted from ANDERSON'S phone, which all corroborated ANDERSON'S statement regarding purchasing methamphetamine from GARCIA-DAVILA and storing shipments of methamphetamine for GARCIA-DAVILA.

## Conclusion

18. Based upon the facts conveyed in this affidavit, your affiant believes that probable cause has been established, demonstrating that, from on or about July 2020, and continuing through on or about March 2021, in the State and District of Minnesota and elsewhere, the defendants FERNANDO GARCIA-DAVILA, JR., aka "EL NEGRO", PABLO MARGARITO LUNA, and JAMES RICHARD ANDERSON, did knowingly and intentionally conspire with each other and with others to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a controlled substance, all in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 846.

Further your Affiant sayeth not.

_____
Anthony Fletcher
Task Force Officer

Drug Enforcement Administration

SUBSCRIBED and SWORN before me
by reliable electronic means via
FaceTime, ~~Zoom~~, and email pursuant to
Fed. R. Crim. P. 41(d)(3)
on this 27th day of August 2020.

*[signature]*
The Honorable Hildy Bowbeer
United States Magistrate Judge